241 P.3d 562

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Ranson J.K. BULLARD, Defendant–Appellant.**

**No. 30317.**

Intermediate Court of Appeals of Hawai'i.

Sept. 27, 2010.

As Corrected Nov. 8, 2010.

Jennifer D.K. Ng, Deputy Public Defender, on the briefs, for defendant-appellant.

Delanie D. Prescott–Tate, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

NAKAMURA, Chief Judge, FUJISE, and REIFURTH, JJ.

Opinion of the Court by NAKAMURA, C.J.

Defendant–Appellant Ranson J.K. Bullard (Bullard) was convicted of excessive speeding, in violation of Hawaii Revised Statutes (HRS) § 291C–105(a)(1) and (a)(2) (2007)[1] for driving his vehicle at least thirty miles per hour over the applicable speed limit and/or in excess of eighty miles per hour. The District Court of the First Circuit (district court)[2] entered its Judgment on November 4, 2009. Both Bullard and Plaintiff–Appellee State of Hawai'i (State) agree that pursuant to *State v. Fitzwater*, 122 Hawai'i 354, 227 P.3d 520 (2010), Bullard's excessive speeding conviction must be vacated because there was insufficient foundation laid to support the admission of the speed check card, which was used to verify the accuracy of the officer's speedometer. As in *Fitzwater*, without the speed check card, there was insufficient evidence to establish the accuracy of the speedometer in the officer's vehicle and to support Bullard's conviction for excessive speeding. The parties disagree, however, over whether entry of judgment on the noncriminal traffic infraction of "regular" speeding, in violation of HRS § 291C–102(a)(1) (2007),[3] is appropriate.

1. HRS § 291C–105 (2007) provides in relevant part:

> **Excessive Speeding.** (a) No person shall drive a motor vehicle at a speed exceeding:
> (1) The applicable state or county speed limit by thirty miles per hour or more; or
> (2) Eighty miles per hour or more irrespective of the applicable state or county speed limit.
> (b) For the purposes of this section, "the applicable state or county speed limit" means:
> (1) The maximum speed limit established by county ordinance;
> (2) The maximum speed limit established by official signs placed by the director of transportation on highways under the director's jurisdiction; or
> (3) The maximum speed limit established pursuant to section 291C–104 by the director of transportation or the counties for school zones and construction areas in their respective jurisdictions.

2. The Honorable T. David Woo presided.

3. HRS § 291C–102 (2007) provides in relevant part:

> **Noncompliance with speed limit prohibited.**
> (a) A person violates this section if the person drives:
> (1) A motor vehicle at a speed greater than the maximum speed limit other than provided in section 291C–105; or
> (2) A motor vehicle at a speed less than the minimum speed limit,
> where the maximum or minimum speed limit is established by county ordinance or by official signs placed by the director of transportation on highways under the director's jurisdiction.

In *Fitzwater*, the Hawai'i Supreme Court, after vacating Fitzwater's excessive speeding conviction for lack of sufficient evidence, remanded the case for entry of judgment on the lesser included non-criminal infraction of regular speeding, in violation of HRS § 291C–102(a)(1). *Fitzwater*, 122 Hawai'i at 357, 227 P.3d at 523. Citing *Fitzwater*, the State argues that we should similarly remand the case for entry of judgment for regular speeding because there was sufficient evidence to establish that Bullard drove his car at a speed exceeding the maximum speed limit. On the other hand, Bullard contends that *Fitzwater* was wrong in remanding the case for entry of judgment for the non-criminal traffic infraction of regular speeding because a non-criminal traffic infraction cannot be a lesser included offense of a criminal offense.

Based on *Fitzwater*, we reject Bullard's contention that regular speeding cannot be treated as a lesser included offense of excessive speeding for purposes of determining whether entry of judgment for regular speeding is appropriate. However, we do not agree with the State that entry of judgment against Bullard for regular speeding is appropriate based simply on the State's showing that there was sufficient evidence at trial to support a regular speeding violation. Instead, we conclude that where an appellate court determines that evidence necessary to prove the greater offense was erroneously admitted, the erroneous admission of that evidence must be harmless beyond a reasonable doubt with respect to the lesser included offense for the entry of judgment on the lesser included offense to be appropriate. In Bullard's case, we conclude that the error in admitting the speed check card was harmless beyond a reasonable doubt with respect to Bullard's regular speeding violation. Accordingly, we remand the case for entry of judgment against Bullard for regular speeding, in violation of HRS § 291C–102(a)(1).

## BACKGROUND

Bullard was charged with driving a motor vehicle at a speed exceeding the applicable speed limit by thirty miles per hour or more and/or driving at a speed exceeding eighty miles per hour irrespective of the applicable speed limit, in violation of HRS § 291C–105(a)(1) and/or HRS § 291C–105(a)(2).

Bullard was cited for excessive speeding by Honolulu Police Department Officer Corinne Rivera (Officer Rivera). At trial, Officer Rivera testified that she had been a patrol officer for almost twenty-one years. On the evening of March 24, 2009, Officer Rivera was on duty, driving a 2003 Toyota 4Runner, which was her "subsidized" police vehicle. Officer Rivera testified that since obtaining her vehicle in 2004, it had been subject to a "speed check" on a yearly basis, with the last two speed checks done at a shop she referred to as "Roy's." During the speed checks, Officer Rivera's car was placed on a machine that "calculates the [car's] speed to see if it's accurate according to their machine."

At trial, over Bullard's objection, the district court admitted a speed check card from Roy's Kalihi Automotive Center & Towing for the speedometer of Officer Rivera's vehicle. The speed check card contained a certification date of July 17, 2008, and an expiration date of July 17, 2009. According to the speed check card, the speedometer of Officer Rivera's vehicle was accurate at speeds of 25, 35, 45, 55, 65, 75, 85, and 95 miles per hour.

Officer Rivera testified that on March 24, 2009, at approximately 10:00 p.m., she encountered Bullard while traveling westbound on the H–1 freeway near Waikele and headed toward Wai'anae. Bullard, who was driving an Acura TL, cut in front of Officer Rivera, causing her to step on her brake to slow down. At that point, Officer Rivera was traveling with the flow of traffic. Officer Rivera flashed her highlights at Bullard to let him know he had cut in front of her. Bullard "accelerated" and he "just started to take off." Even with her windows up, Officer Rivera heard Bullard's vehicle accelerate, with the sound of Bullard's engine increasing to a "higher frequency" and getting louder.

Bullard's vehicle immediately pulled away from Officer Rivera's vehicle, which was traveling fifty-five miles per hour. Officer Rivera described Bullard's action in pulling away from her as follows:

Q. [By the Prosecutor:] .... [D]id [Bullard's car] pull away from you?

A. [By Officer Rivera:] Yes, it pulled away from me, um—right away.

Q. Right away?

A. Yes.

Q. And, um—based on your 21 years experience in patrol, when he took off, how fa—would you say it was very fast or just trying to get out of your way or was he, uh—taking off at—so at this point you're going 55.

A. Yes.

Q. And when you say he took off, what did that—based on your 21 years of ex—of experience, what did that indicate to you at this point?

A. That he was speeding away.

Q. He was speeding.

A. Yeah.

Q. Speeding above the speed limit?

A. Yes.

Officer Rivera accelerated to pursue Bullard. When she got behind Bullard, Officer Rivera paced Bullard's vehicle for approximately two-tenths of a mile, maintaining the same distance between herself and Bullard. Officer Rivera's speedometer showed that Bullard was traveling 91 miles per hour during this pacing. Officer Rivera testified that speed limit signs in the area showed that the speed limit was fifty-five miles per hour, and the district court took judicial notice, based on a speed schedule proffered by the State, that the applicable speed limit was fifty-five miles per hour. Officer Rivera pulled Bullard over and cited him for excessive speeding and unsafe lane change.

The State rested after calling Officer Rivera. Bullard moved for judgment of acquittal, which the district court denied. Bullard then testified in his own defense.

Bullard testified that on the evening of March 24, 2009, he had finished work and was on his way home. While changing lanes, he "forgot to check [his] blind spot," and "accidently cut [Officer Rivera] off." Bullard testified that, at that point, he was going about 45 or 50 miles per hour. Officer Rivera "high beamed" Bullard, so Bullard "sped up to like 70" to give Officer Rivera space. Bullard knew he was going 70 miles per hour because he looked at his speedometer. Bullard admitted that he had been speeding. He stated, "I mean, like I admit that I was speeding, but it's not excessively.... I was going like at the most 70." Later, Bullard revised his estimate and testified that at most, he was traveling between 70 and 75 miles per hour.

After hearing the evidence, the district court found Bullard guilty as charged of excessive speeding. The district court found that Bullard had been traveling at a speed of 91 miles per hour in an area where the speed limit was 55 miles per hour, and that Bullard was "both speeding over 80 miles an hour and also speeding more than 30 miles an hour in excess of the speed limit."

## DISCUSSION

### I.

 Bullard argues that pursuant to the Hawai'i Supreme Court's decision in *Fitzwater*, 122 Hawai'i 354, 227 P.3d 520, the State failed to lay a sufficient foundation to support the admission of the speed check card. He further argues that without the speed check card, there was insufficient evidence to support his conviction for excessive speeding. The State concedes error on both these points. We agree with the State's concession of error because we conclude that *Fitzwater* provides controlling authority that Bullard's arguments on these two points are correct.

### II.

#### A.

We now turn to the question disputed by the parties, namely, whether entry of judgment against Bullard on the non-criminal traffic infraction of regular speeding, in violation of HRS § 291C–102(a)(1), is appropriate in this case.

In *State v. Malufau*, 80 Hawai'i 126, 906 P.2d 612 (1995), the Hawai'i Supreme Court discussed whether the protection against double jeopardy under the United States and Hawai'i Constitutions "bars retrial on 'lesser'

included offenses after a determination on appeal that insufficient evidence was presented at trial to support a conviction [on the greater offense.]" *Id.* at 134–35, 906 P.2d at 620–21. In the context of that discussion, the supreme court noted that federal courts and most state courts follow the rule that "if an appellate court deems the evidence insufficient as a matter of law to support a jury's guilty verdict on a greater offense but finds the evidence sufficient to support a conviction on a lesser included offense, it may enter a judgment of conviction on that lesser included offense." *Id.* at 135, 906 P.2d at 621 (block quote format and citations omitted). The Hawai'i Supreme Court stated the rationale for this rule as follows:

> When the evidence is found insufficient on appeal only as to the greater offense then it is clear that had the trial judge acted properly the lesser offense would have gone to the jury and would have certainly resulted in conviction, as is reflected by the fact that the jury's actual verdict shows that the jury found the existence of every element of the lesser-included offense as well.

*Id.* at 135–36, 906 P.2d at 621–22 (block quote format, brackets, and citation omitted).

The Hawai'i Supreme Court noted that in *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), the United States Supreme Court had "reaffirmed the principle that the double jeopardy clause does not bar retrial after a conviction is overturned on the basis of trial error." *Malufau*, 80 Hawai'i at 136, 906 P.2d at 622. The Hawai'i Supreme Court stated:

> "From this, it would seem to follow that if the appellate court has also found some error in the trial [in addition to a determination that insufficient evidence to support a conviction of the greater offense was presented at trial], then it is proper to remand the case for retrial on the lesser included offense."

*Id.* (citation omitted; brackets in original). The Hawai'i Supreme Court held that "remanding a case for retrial on lesser included

offenses following an appellate determination that insufficient evidence to support a conviction of a greater offense was presented at trial does not offend the double jeopardy clause" of the United States Constitution or the Hawai'i Constitution.[4] The supreme court concluded that there was insufficient evidence to support Malufau's conviction on the charged offense of first degree assault, but sufficient evidence to support convictions on the lesser included offenses of second and third degree assault. *Id.* at 133–34, 906 P.2d at 619–20. The supreme court remanded the case for retrial on these lesser included offenses. *Id.* at 134, 138, 906 P.2d at 620, 624.

In cases decided after *Malufau*, the Hawai'i Supreme Court has remanded the case for entry of a judgment of conviction, instead of retrial, on the lesser included offense after concluding on appeal that there was insufficient evidence to support the conviction on the greater offense. *State v. Line*, 121 Hawai'i 74, 90–91, 214 P.3d 613, 629–30 (2009); *State v. Wallace*, 80 Hawai'i 382, 414–16, 910 P.2d 695, 727–29 (1996). The supreme court cited *Malufau* in support of these decisions. *Line*, 121 Hawai'i at 90, 214 P.3d at 629; *Wallace*, 80 Hawai'i at 416, 910 P.2d at 729.

### B.

In *Fitzwater*, 122 Hawai'i at 377–78, 227 P.3d at 543–44, the Hawai'i Supreme Court remanded the case for entry of a judgment on the lesser included traffic infraction of regular speeding after concluding that there was insufficient evidence to support Fitzwater's excessive speeding conviction. Fitzwater was charged with excessive speeding for traveling 70 miles per hour in an area where the speed limit was 35 miles per hour, thereby exceeding the applicable speed limit by at least 30 miles per hour, in violation of HRS § 291C–105(a)(1). The officer who issued the citation testified that he paced Fitzwater's motorcycle traveling at 70 miles per hour for two-tenths of a mile based on the officer's speedometer reading. *Id.* at 358, 227 P.3d at 524.

---

4. The supreme court further held that remanding the case for retrial on the lesser included offense in this situation also did not violate HRS § 701- 111(1)(c) (1993). *Malufau*, 80 Hawai'i at 137, 906 P.2d at 623.

The trial court relied upon alternate grounds in finding beyond a reasonable doubt that Fitzwater's speed was 70 miles an hour. The trial court relied upon its finding that the speed check evidence showed that the officer's speedometer had been found to be accurate at both 65 and 75 miles per hour. *Id.* at 360, 227 P.3d at 526. The trial court alternatively relied upon its finding that "irrespective" of the speed check evidence, the officer's pacing of Fitzwater at 70 miles per hour was "reasonably accurate" based on the officer's testimony that he had operated his patrol car almost daily for over a year, observed the operation of the speedometer, and found that it seemed to be operating normally at all times. *Id.*

The supreme court's analysis in concluding that the entry of judgement on regular speeding was appropriate was, in relevant part, as follows:

> As noted above, the district court relied on alternate grounds in finding that Fitzwater's "speed was 70 miles an hour beyond a reasonable doubt." In addition to the speed check evidence, which we have concluded was improperly admitted, *the district court held that [Officer] Ah Yat's testimony that he had been operating his vehicle almost daily for over a year and observed that his speedometer seemed to be operating normally at all times provided an independent basis for concluding that Fitzwater had exceeded the speed limit by 35 miles per hour.* Similarly, in its Answering Brief to the [Intermediate Court of Appeals], the State argued that this testimony by Ah Yat was sufficient "to establish that the speedometer of the police vehicle was accurately operational on the date of the offense...."

"HRS § 701–114(1)(a) and (b) (1993) requires proof beyond a reasonable doubt of each element of the offense...." [*State v.*] *Assaye,* 121 Hawai'i [204,] 216, 216 P.3d [1227,] 1239 [ (2009) ] (quoting [*State v.*] *Manewa,* 115 Hawai'i [343,] 357–58, 167 P.3d [336,] 350–51 [ (2007) ] ). To prove that Fitzwater was speeding excessively in violation of HRS § 291C–105, the State must prove beyond a reasonable doubt that Fitzwater was driving at a speed exceeding

the speed limit by 30 miles per hour or more. *Id.* Ah Yat testified that Fitzwater was traveling 70 miles per hour in a 35 mile per hour zone, which was 5 miles per hour greater than the threshold established by HRS § 291C–105. Other than Ah Yat's testimony that his speedometer appeared to have been operating normally throughout the previous year, there was no other admissible evidence to establish that Ah Yat's speedometer was accurate and in proper working order. Thus, we must decide whether Ah Yat's testimony alone was sufficient to establish beyond a reasonable doubt that the speedometer on his police vehicle was accurate to within 5 miles per hour on the night of the offense. We conclude that it was not, given the relatively small margin of error of 5 miles per hour.

Accordingly, there was insufficient evidence in the record to sustain Fitzwater's conviction under HRS § 291C–105, and the conviction must be vacated. *Cf. Assaye,* 121 Hawai'i at 216, 216 P.3d at 1239. However, there was sufficient evidence to establish that Fitzwater was driving his vehicle "at a speed greater than the maximum speed limit" in violation of HRS § 291C–102(a)(1), based on Fitzwater's admission during his testimony that he was driving in excess of the speed limit, as well as Ah Yat's testimony. See *State v. Simpson,* 64 Haw. 363, 370, 641 P.2d 320, 325 (1982) ("Under the 'waiver doctrine' appellate courts will review the sufficiency of the evidence in light of all the evidence presented in the record."); *State v. Pudiquet,* 82 Hawai'i 419, 423–425, 922 P.2d 1032, 1036–1038 (App.1996) (considering the entire record, including the defendant's testimony, in assessing the sufficiency of the evidence); *State v. Gomes,* 117 Hawai'i 218, 224, 177 P.3d 928, 934 (2008) (concluding that because the defendant "put on evidence after moving for a judgment of acquittal at the end of the State's case, he waived any error in the denial" of this motion). Accordingly, we remand for entry of a judgment that Fitzwater violated HRS § 291C–102(a)(1), in accordance with the applicable statutes governing noncriminal traffic infractions. *Cf. State v.*

*Line*, 121 Hawai'i 74, 90, 214 P.3d 613, 629 (2009) ("It is established that 'if an appellate court determines that the evidence presented at trial was insufficient to support a conviction of a greater offense but sufficient to support a conviction of a lesser included offense, the court may remand for entry of judgment of conviction on the lesser included offense.'") (citation omitted).

*Id.* at 377–78, 227 P.3d at 543–44 (footnote and brackets in original omitted; emphases added).

## C.

Citing *Fitzwater*, the State argues that because there was sufficient evidence presented at trial to prove that Bullard "was noncompliant with the speed limit," this court should remand the case for entry of a judgment that Bullard committed the infraction of regular speeding, in violation of HRS § 291C–102(a)(1). We conclude that the State's mere showing that the evidence presented at trial was sufficient to establish that Bullard committed a regular speeding infraction is not enough, by itself, to warrant the entry of judgment on the regular speeding infraction. Such a showing would be sufficient to justify remanding Bullard's case for retrial on the lesser included regular speeding infraction. However, to warrant remand for entry of judgment on the regular speeding infraction, the State must also show that the erroneous admission of the speed check evidence was harmless beyond a reasonable doubt as to the determination that Bullard committed the regular speeding infraction.

▮ The general authority of an appellate court to remand a case for entry of judgment on the lesser included offense,[5] rather than retrial, when the evidence is insufficient to support the greater offense for which the defendant was convicted but is sufficient to support a lesser included offense, is based on the following rationale: "[T]here is no need to retry a defendant for a lesser included

offense when the elements of the lesser included offense were necessarily proven to the jury beyond a reasonable doubt in the course of convicting the defendant of a greater offense." *State v. Haynie*, 116 N.M. 746, 867 P.2d 416, 418 (1994). In *Malufau*, the Hawai'i Supreme Court echoed this rationale for the appellate court's authority to direct entry of judgment on the lesser included offense. The supreme court explained that because the verdict on the greater offense shows that the jury must have found the existence of every element of the lesser included offense, "it is clear that had the trial judge acted properly [by granting judgment of acquittal on the greater offense for insufficient evidence], the lesser [included] offense would have gone to the jury and would have certainly resulted in conviction." *Malufau*, 80 Hawai'i at 135–36, 906 P.2d at 621–22.

▮ A difficulty arises, however, where the appellate court determines that certain evidence presented to the trier of fact was improperly admitted. In a typical appeal in which the appellate court finds that evidence was erroneously admitted, we do not simply affirm the defendant's conviction upon a determination that the properly admitted evidence was sufficient to support the defendant's conviction. Instead, we analyze whether despite the sufficiency of the properly admitted evidence, there is a reasonable possibility that the trial court's erroneous admission of evidence might have contributed to the defendant's conviction. *See State v. Machado*, 109 Hawai'i 445, 452–53, 127 P.3d 941, 948–49 (2006). In other words, we analyze whether the erroneous admission of evidence was harmless beyond a reasonable doubt. *Id.* Where evidence is improperly admitted, we cannot know for sure (i.e., beyond any possible doubt) whether the trier of fact would have reached the same result without the improperly admitted evidence. Nevertheless, we affirm the defendant's conviction if we can say that the error was harmless beyond a reasonable doubt.

---

5. For purposes of our analysis, we will use the term "lesser included offense" to refer to an offense or violation of a lower class and grade than the greater offense and which the trier of fact necessarily found had been committed in

finding the defendant guilty of the greater offense. *See Malufau*, 80 Hawai'i at 138, 906 P.2d at 624; *Wallace*, 80 Hawai'i at 415, 910 P.2d at 728.

Logic dictates that the same harmless error analysis must apply in determining whether entry of judgment on the lesser included offense is appropriate where the erroneous admission of evidence renders the evidence insufficient as to the greater offense, but sufficient as to a lesser included offense. *See Doreus v. United States,* 964 A.2d 154, 157–60 (D.C.2009) (applying harmless error analysis in deciding whether entry of judgment on lesser included offense was appropriate in light of erroneous admission of evidence); *see also Allison v. United States,* 409 F.2d 445, 451 (D.C.Cir.1969) (concluding that for an appellate court to exercise its authority to enter judgment on a lesser included offense, it must be clear that "no undue prejudice will result to the accused"). This analysis is particularly important when the evidence erroneously admitted is relevant to proving elements for the greater offense and the lesser included offense. The trier of fact's finding that the greater offense had been committed establishes that it also found that the prosecution had proved the elements of the lesser included offense. However, the potential effect of the erroneous admission of evidence on the lesser included offense must be determined before entry of judgment on the lesser included offense is appropriate. Otherwise, the appellate court may be directing entry of judgment on the lesser included offense in a case where the erroneous admission of evidence prejudiced the defendant's rights as to both the greater offense and the lesser included offense.

### D.

The decisions of the Hawai'i Supreme Court are consistent with this analysis. For example, in *Malufau* the supreme court concluded that there was insufficient evidence of first degree assault of which Malufau was convicted, but sufficient evidence of the lesser included offenses of second and third degree assault. *Malufau,* 80 Hawai'i at 132–34, 906 P.2d at 618–20. The supreme court also held that the trial court had erred in permitting a doctor to testify about the severity of the injuries that the victim would have sustained in the absence of treatment. *Id.* at 130, 906 P.2d at 616. The supreme court remanded for a new trial on the lesser included offenses, instead of for entry of judgment on a lesser included offense. *Id.* at 138, 906 P.2d at 624. Although the supreme court did not specifically discuss the harmless error analysis, it suggested that the erroneous admission of the doctor's testimony was not harmless as to the lesser included offense of second degree assault. In discussing whether HRS § 701–111(1)(c) barred retrial, the supreme court noted that "if Malufau had been convicted of assault in the second degree, we would have held there was sufficient evidence to sustain the conviction, but would have remanded for a retrial in light of the circuit court's erroneous admission of Dr. Walczak's testimony." *Id.* at 137, 906 P.2d at 623.

In *Wallace,* the supreme court held that the trial court erred in admitting a chemist's testimony about the net weight of cocaine seized from Wallace because an inadequate foundation had been laid regarding the reliability of the scale used to weigh the cocaine. *Wallace,* 80 Hawai'i at 412, 910 P.2d at 725. Without the erroneously admitted evidence, there was insufficient evidence to prove the charged offense of first degree promotion of a dangerous drug, which required proof that Wallace possessed at least one ounce of cocaine. *Id.* at 413, 910 P.2d at 726. The supreme court remanded the case for entry of judgment of conviction on the lesser included offense of third degree promotion of a dangerous drug, which only required proof that Wallace possessed cocaine in any amount. *Id.* at 416, 910 P.2d at 729. The erroneous admission of the evidence regarding the net weight of the cocaine was clearly harmless beyond a reasonable doubt as to the included offense of third degree promotion of a dangerous drug since that lesser included offense did not require proof of the weight of the cocaine.

Similarly in *Fitzwater,* the erroneous admission of the speed check card was harmless beyond a reasonable doubt as to the included infraction of regular speeding because the trial court's express findings made clear that it found Fitzwater guilty of excessive speeding "irrespective" of the speed check evidence. *Fitzwater,* 122 Hawai'i at 360, 227 P.3d at 526. The trial court's ex-

press findings definitively established that it would have found that Fitzwater had committed the infraction of regular speeding even without the speed check evidence.[6]

## E.

■ Bullard's case is different from *Fitzwater* because there are no comparable findings by the trial court on how it would have viewed the evidence irrespective of the speed check card. In Bullard's case, the district court did not enter findings establishing that it would have found that Bullard committed a regular speeding infraction even if the speed check card had not been admitted. Accordingly, we must determine whether the erroneous admission of the speed check card was harmless beyond a reasonable doubt as to the lesser included regular speeding infraction in deciding whether to remand Bullard's case for retrial or for entry of judgment on the lesser included regular speeding infraction.

We conclude, under the facts of this case, that the erroneous admission of the speed check card was harmless beyond a reasonable doubt with respect to the lesser included regular speeding infraction. The properly admitted evidence showed that after cutting in front of Officer Rivera, who had been traveling with the flow of traffic, Bullard "accelerated," "just started to take off," and immediately pulled away from Officer Rivera. More significantly, Bullard himself admitted in his testimony that he had been speeding, that he "sped up to like 70" in a 55 miles per hour zone, and that "at most" he was traveling between 70 and 75 miles per hour. Under these circumstances, there is no reasonable possibility that the erroneous admission of the speed check card might have affected

the district court's finding that Bullard drove his car in excess of the maximum 55 miles per hour speed limit.

## F.

■ We reject Bullard's argument that *Fitzwater* was wrong in remanding the case for entry of judgment for the non-criminal traffic infraction of regular speeding because a non-criminal traffic infraction cannot be a lesser included offense of a criminal offense. Bullard provides no persuasive explanation for why the analysis applicable to lesser included criminal offenses should not also apply to lesser included traffic infractions.

In any event, Bullard acknowledges that *Fitzwater* rejected "the claim he advances here," but he argues that *Fitzwater* was wrongly decided. This court is not at liberty to overturn a decision of the Hawaiʻi Supreme Court. Accordingly, we reject Bullard's contention that we lack the authority to remand the case for entry of judgment on the lesser included traffic infraction of regular speeding.

## CONCLUSION

We vacate the November 4, 2009, Judgment of the district court, and we remand the case for entry of a judgment that Bullard committed the traffic infraction of regular speeding, in violation of HRS § 291C–102(a)(1).

---

**6.** As noted, the supreme court held that without the speed check card, the evidence was insufficient to prove excessive speeding but was sufficient to prove the lesser included speeding infraction. *Fitzwater,* 122 Hawaiʻi at 377–78, 227 P.3d at 543–44.